Hugh E. SPERRY, Regional Director of The Seventeenth Region of the National Labor Relations Board, for and on Behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

LOCAL UNION NO. 562, UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF the PLUMBING AND PIPE FITTING INDUSTRY OF the UNITED STATES AND CANADA, AFL-CIO, Respondent.

No. 851.

United States District Court
W. D. Missouri,
Central Division.
Nov. 2, 1962.

Thomas C. Hendrix, Atty., N. L. R. B., Kansas City, Mo., and Stanley A. Mestel, N. L. R. B., Office of Gen. Counsel, Washington, D. C., for petitioner.

Harry H. Craig, St. Louis, Mo., for respondent.

GIBSON, Chief Judge.

This cause came before the Court by virtue of the petition of The Regional Director of the Seventeenth Region of The National Labor Relations Board wherein he prayed for the issuance of a temporary injunction pending the final disposition of the substantive issues involved by the Board, his prayer being predicated upon the terms and provisions of § 10(l) of The National Labor Relations Act, as amended. Issue was joined when the Respondent filed its return to the order to show cause why a temporary injunction should not issue and an answer to the petition for such relief.

At the conclusion of the opening statements of counsel for both parties it appeared that there is no dispute whatsoever concerning the facts involved and it was then stipulated that the opening statement of counsel for the Respondent should be accepted, as added to, as the facts upon which the Court shall make its findings and conclusions and issue its decision and order. ,

Predicated upon the agreed statement of facts contained in said stipulation, and as material to the issues here involved, the Court makes the following:

## FINDINGS OF FACT

1. Petitioner is Regional Director of the Seventeenth Region of the Board, an agency of The United States, and filed the petition herein for and on behalf of the Board.

2. On or about September 25, 1962, Foor Engineering Company (herein called "Foor"), pursuant to the provisions of the Act, filed a charge with the Board alleging, *inter alia*, that Local Union No. 562, United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of The United States and Canada, AFL–CIO, a labor organization, has engaged in, and is engaging in, unfair labor practices within the meaning of § 8(b) (7) subparagraph (C) of the Act.

3. The aforesaid charge was referred to petitioner as Regional Director of the Seventeenth Region of the Board.

4. There is, and petitioner has, reasonable cause to believe that:

(A) Respondent, an unincorporated association, is an organization in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work.

(B) Respondent maintains its principal offices at St. Louis, Missouri, and at all times material herein has been engaged within this judicial district in transacting business and promoting and protecting the interests of its employee members.

(C) Foor, an Oklahoma corporation whose principal offices are located at Oklahoma City, Oklahoma, is engaged in the construction of oil facilities including refineries, gasoline plants and booster stations. During 1961, Foor, in the operation of its business, performed services and supplied materials outside the State of Oklahoma valued at in excess of $50,000.00.

(D) At all times material herein Panhandle Eastern Pipeline Company (herein called "Panhandle") has been expanding its facilities. In connection therewith, Foor has been engaged by Panhandle to install a compressor at its compressor station located at Centralia, Missouri (herein called "Centralia Project").

(E) Respondent is not currently certified as the representative of any of Foor's employees.

(F) No charge has been filed with the Board under § 8(a) (2) of the Act alleging that Foor has unlawfully recognized or assisted any labor organization.

(G) The Respondent labor organization represents and seeks to represent pipefitters and welders who work in the construction industry. It does not represent or seek to represent other classes of workers.

(H) Foor is an employer engaged in construction industry work and the Centralia Project is construction work.

(I) On or about the 20th day of August, 1962, a duly authorized agent and representative of the Respondent placed a long distance telephone call to an officer of Foor who was then in Oklahoma City, Oklahoma, and stated that the Union had learned that Foor was to do the construction work on the Centralia Project and that the Union wanted the following things:

1. That qualified pipefitters and welders living within the geographical area of the Centralia Project be given priority in opportunities of employment so that local residents would be given work before persons from other states or areas were employed.

2. That the pipefitters and welders to be employed be required, as a condition of employment, to become members of the Union after the seventh day following the beginning of their employment or the date of such an agreement between Foor and the Union, whichever is later.

(J) No agreements were reached during the telephone conversation of August 20th, and during an oral conversation between the same parties at the situs of the construction project on or about August 23, 1962, the Respondent repeated its demands, all of which were refused by Foor.

(K) Thereafter, the Union continued to insist upon the demands made and when Foor continued to refuse them, began picketing on August 27, 1962, with signs reading "Unfair Pipefitters Local 562."

(L) At all times until at least August 27, 1962, Foor had not employed any pipefitters or welders for work on the Centralia Project and none were there working. Neither had the Union made any claim or demand to furnish or represent any other class or workers.

(M) After picketing began on August 27th, Foor employed pipefitters and welders in the states of Texas, Oklahoma and Arkansas, imported them into Missouri and assigned them to work on the Centralia Project.

(N) Picketing began on August 27, 1962, and still continues. The picketing has induced individuals employed by other persons to refuse in the course of their employment to pick up, deliver or transport goods or to perform their normal employee services.

(O) Picketing has been engaged in for more than thirty days without the filing of a petition under § 9(c) of the Act for a Board election.

(P) At all times picketing has been engaged in for the sole purpose of protesting the refusal of Foor to agree to the Union demands specified in subparagraphs (I), (J) and (K) above.

(Q) At no time has the Union requested, demanded or sought to represent the pipefitters and welders which Foor imported from outside the state of Missouri, at no time has it attempted to act as their collective bargaining representative, at no time has it sought to

acquire them as union members, and it is not picketing for any of these objects or purposes.

(R) Notwithstanding the above, Respondent, since on or about August 23, 1962, has demanded that For recognize and bargain with Respondent as the representative of Foor's employees, and this was an object of the aforesaid picketing.

(S) The acts and conduct of Respondent set forth in Findings of Fact 4(I), (J), (K), (N), (O), (P), (Q), and (R) above occurring in connection with the operations of Foor, have a close, intimate and substantial relation to trade, traffic, and commerce among the several states and tend to lead to and do lead to labor disputes burdening and obstructing commerce and the free flow of commerce.

5. It may fairly be anticipated that, unless enjoined, Respondent will continue and repeat the acts and conduct set forth in Findings of Fact 4(I), (J), (K), (N), (O), (P), (Q), and (R) above, or similar or like acts and conduct.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of the parties and of the subject matter of this proceeding, and under § 10(l) of the Act is empowered to grant injunctive relief.

2. There is, and petitioner has, reasonable cause to believe that:

(a) Respondent is a labor organization with the meaning of §§ 2(5), 8(b) and 10(l) of the Act.

(b) Foor is engaged in commerce within the meaning of §§ 2(6) and (7) of the Act.

(c) Respondent has engaged in unfair labor practices within the meaning of § 8(b) (7) subparagraph (C) of the Act, affecting commerce within the meaning of §§ 2(6) and (7) of the Act, and a continuation of these practices will impair the policies of the Act as set forth in § 1(b) thereof.

3. To preserve the issues for the orderly determination as provided in the Act, it is appropriate, just and proper that, pending the final disposition of the matters herein involved pending before the Board, respondent, its officers, representatives, agents, servants, employees, attorneys, and all members and persons acting in concert or participation with it or them be enjoined and restrained from the commission, continuation, or repetition, of the acts and conduct set forth in Findings of Fact 4(I), (J), (K), (N), (O), (P), (Q), and (R) above and any acts or conduct in furtherance or support thereof or like or related acts or conduct the commission of which in the future is likely or may fairly be anticipated from respondent's acts and conduct in the past.

## OPINION

As was stated previously, all pertinent facts were stipulated by the parties. It was stipulated that the picketing was present, that the picketing had been conducted for a period in excess of thirty days without a petition under § 9(c) having been filed, that the purpose of the picketing was to coerce Foor into entering into an agreement whereby members of respondent who resided within the local geographical area would be afforded priority in working on the project.

It thus appears that two legal issues are presented to the Court. The first is whether an object of the picketing is "forcing or requiring an employer to recognize or bargain with a labor organization as the representative of his employees, or forcing or requiring the employees of an employer to accept or select such labor organization as their collective bargaining representative * * *" under the provisions of § 8(b) (7) of the Act. It is clear that an object of the picketing was not to require the employees of Foor to accept respondent as their representative, as this purpose was expressly disavowed. However, it is the opinion of the Court that an object of the picketing was to force or require Foor to recognize and bargain with respondent as the representative of his employees. Respond-

ent's theory is that it could not be guilty of such an objective because it did not wish to represent the employees presently working for Foor, and because when it started the picketing in question, there were no employees to bargain for or represent. However, it seems apparent that if respondent's demands had been granted, its members would have been the employees of Foor on this job, and it would have been the bargaining agent of these employees. The Court is unable to see any valid distinction under § 8(b) (7) (C) of the Act where those employees a labor organization seeks to represent are to be employed in the future, or whether they are already working. The effect of the picketing seems to clearly be the same in either case. The effect would be to tend to force or require Foor to enter into a contract with respondent, whereby respondent's members would be the employees of Foor, and respondent would be recognized as the collective bargaining representative of the employees so hired.

The second issue raised by respondent is whether Congress, in passing § 8(f) of the Act, intended to except the construction industry from § 8(b) (7) (C) of the Act, or whether § 8(f) has that effect. Section 8(f) provides that it shall not be an unfair labor practice under §§ 8(a) or (b) for an employer to enter into a labor contract which may be executed before any employees are hired, which may be with a union which is not certified as the representative of the employees, and which does not represent a majority of the employees before the contract is executed, which provides for mandatory union membership after seven days, which provides that any employer must inform the union of available jobs, which provides that the union may refer qualified employees, which provides for certain training or experience qualifications, or which provides for seniority rights granted upon the basis, among other things, of length of service in the particular geographical area.

Under this section it is apparent, and petitioner admits, that the demands of respondent could have been incorporated into a legal contract which would not have amounted to an unfair labor practice. Thus, the issue resolves itself to; if such a pre-hiring agreement is legal in the construction industry, is it still an unfair labor practice for a union to picket to coerce an employer into entering into such an agreement in a manner which, were it not for the provisions of § 8(f), would be an unfair labor practice under § 8(b) (7) (C).

The Court has been unable to find any authority involving the relationship of § 8(f) and § 8(b) (7) which would serve to elucidate the issues in the case at bar. The wording of § 8(f) renders the situation even more nebulous. Section 8(f) provides that "It shall not be an unfair labor practice under subsections (a) and (b) of this section for an employer * * *" to enter into such a prehire agreement. It would appear at first blush that § 8(f), by providing that it would not be an unfair labor practice under § 8(b) to enter into such an agreement, would be intended to exempt picketing to achieve such a contract from the prohibitions of § 8(b) (7) (C). However, § 8(f) mentions only that it shall not be an unfair labor practice for an *"employer"* to enter into such a contract. Thus, it is not clear what effect this has on union activities which would otherwise constitute an unfair labor practice.

Lacking clear-cut language in the statute in question, or any applicable authority on the issue, the Court is forced to turn to the legislative history of § 8(f) to gain insight into the interpretation of the somewhat apparently inconsistent terminology of this section.

The then Senator John F. Kennedy, stated of a 1958 proposal almost identical with § 8(f), at 104 Cong.Rec. 10249 (daily ed. June 16, 1958):

> "It was not the intention of the Committee to require the making of

a prehire agreement, but rather to permit them; nor was it the intention of the Committee to authorize a labor organization to strike, picket, or otherwise coerce an employer to sign a prehire agreement where the majority status of the union had not been established. The purpose of this section is to permit voluntary prehire agreement. This is because of the inability to conduct representation elections in the construction industry."

Representative Barden agreed with the above statement at 105 Cong.Rec. 16630 (daily ed. Sept. 4, 1959).

A statement by the House Manager is contained in H.R.Rep.No. 1147, 86th Cong., 1st Sess. 42. He stated:

"Nothing in Section 8(f) is intended * * * to authorize the use of force, coercion, strikes or picketing to compel any person to enter into such prehire agreement."

A comment on the legislative history of § 8(f) may be found in CCH Lab.L. Rep. ¶ 4520.89 (CCH Explanation). There it is stated:

".89 Union pressure to force agreement; hiring-hall restrictions. —The legislative history of Section 8 (f) shows that the exceptions for construction-industry contracts were intended to liberalize the rules only for contracts which are voluntarily made. House Report No. 1147 note: 'Nothing in such provision is intended to restrict the applicability of the hiring hall provisions enunciated in the Mountain Pacific case (119 N.L.R.B. 883, 893) *or to authorize the use of force, coercion, strikes or picketing to compel any person to enter into such*

*prehire agreements.'* * * *"
(Emphasis supplied).

Similarly, in discussing the duty of an employer to bargain with a union in respect to prehire agreements, ¶ 4520.88 of the CCH Explanation states:

"* * * Since these provisions are permissive, not compulsory, if a union seeking such a contract is not actually the majority representative of a representative work force already employed, the employer is under no duty to bargain with it * * *."

■ Thus, it seems clear from the legislative history of § 8(f), even though not from the statute itself, that there was no intention to legalize picketing by reason of § 8(f), which otherwise is made an unfair labor practice under § 8(b) (7) (C).

This Court is not empowered to conclusively decide the merits of the legal contentions of the parties. Those questions will ultimately be decided by the National Labor Relations Board and the appellate courts. This Court need only decide whether there is reasonable cause to believe that the elements of an unfair labor practice are present. Schauffler v. Local 1291, International Longshoremen's Ass'n., 292 F.2d 182, 187 (3 Cir. 1961).

■ Since the Court has found that there is reasonable cause to believe that all the elements of an unfair labor practice under § 8(b) (7) (C) of the Act are present, and that § 8(f) of the Act does not except respondent from the operation of § 8(b) (7) (C), it is the Court's opinion that the application of ordinary equitable principles requires that the temporary injunction sought should issue.

IT IS SO ORDERED.